**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**

FEDERAL HOME LOAN MORTGAGE CORPORATION
8200 JONES BRANCH DR.
MCLEAN, VA 22102,

Plaintiff,

v.

3900 CORNELL DR LLC,
c/o DIRECT SOURCE WEALTH INC.
P.O. BOX 923, CABO ROJO,
PUERTO RICO 00623,

And

OHIO DEPARTMENT OF JOB AND FAMILY SERVICES, BUREAU OF UNEMPLOYMENT COMPENSATION,
30 E. BROAD ST.
COLUMBUS, OH 43215

And

ROTO-ROOTER SERVICES COMPANY,
9490 BEYERS RD.
MIAMISBURG, OH 45324,

And

DRY PATROL, LLC,
711 BUSINESS PARKWAY
CARLISLE, OH 45005

And

ARBOR TECH & PROPERTY MAINTENANCE,
2816 CALVIN AVE.
DAYTON, OH 45414

Defendants.

Case No. ______________

JUDGE:

**COMPLAINT FOR JUDGMENT ON NOTE, FORECLOSURE OF MORTGAGE, ENFORCEMENT OF SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS, AND APPOINTMENT OF RECEIVER**

## INTRODUCTION AND RELIEF REQUESTED

1. Plaintiff Federal Home Loan Mortgage Corporation, a corporation organized and existing under the laws of the United States ("Freddie Mac"), hereby alleges the causes of action set forth in this Complaint against Defendants 3900 Cornell Dr. LLC ( "Borrower") the Ohio Department of Job and Family Services, Bureau of Unemployment Compensation, Dry Patrol, LLC, Roto-Rooter Services Company, and Arbor Tech and Property Maintenance (collectively "Defendants"), and thereby seeks foreclosure against Defendants as well as the appointment of Chris Nielson of Trigild IVL, LLC as receiver (the "Receiver") to take possession of Borrower's real property more particularly described in Exhibit A hereto (the "Property"). The Property consists of a multifamily residential facility in Dayton, Ohio and known as Meadow Bridge and Pine Bridge Apartments. Borrower has defaulted on its reimbursement obligations to Freddie Mac pursuant to the terms of the reimbursement documents described below. The Property serves as collateral for the reimbursement obligations of Borrower to Freddie Mac.

2. As described below, Freddie Mac is contractually entitled to the immediate appointment of a receiver to take possession of the Property. Furthermore, the appointment of a receiver is appropriate because Borrower lacks the financial wherewithal to maintain and operate the Property, and it has consented to the appointment of a receiver to take possession of the Property.

## PARTIES

3. Freddie Mac is a government-sponsored enterprise chartered by Congress and organized and existing under the laws of the United States, with its principal place of business in McLean, Virginia. Congress chartered Freddie Mac to facilitate the nationwide secondary residential mortgage market. *See* 12 U.S.C. § 1451. Under its federal statutory charter, Freddie Mac has a public mission to provide liquidity, stability, and affordability to the U.S. housing market, including the market for quality, affordable rental housing.

4. The Housing and Economic Recovery Act of 2008 ("HERA"), Pub. L. No. 110-289, 122 Stat. 2654 (codified as 12 U.S.C. § 4511 *et seq.*), established the Federal Housing Finance Agency ("FHFA") as Freddie Mac's primary regulator.

5. HERA provides that "[n]o property of [FHFA] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of [FHFA, nor shall any involuntary lien attach to the property of [FHFA]." *See* 12 U.S.C. § 4617(j)(3).

6. On September 6, 2008, pursuant to HERA, the Director of FHFA, placed Freddie Mac into conservatorship, where it remains to this day. *See* 12 U.S.C. § 4617(a). As Conservator, FHFA succeeded to all of Freddie Mac's rights, titles, powers, privileges, and assets. 12 U.S.C. § 4617(b)(2)(A)(i). FHFA, as Conservator is statutorily empowered to "preserve and conserve [Freddie Mac's] name," and to "collect all obligations and money due" Freddie Mac. 12 U.S.C. § 4617(b)(2)(B)(i)-(iv). Congress also mandated that "no court may take any action to restrain or affect the exercise of [FHFA's] powers or functions … as a conservator." 12 U.S.C. § 4617(f). Because a receiver derives its authority from the Court, Section 4617(f) also precludes a receiver from restraining or affecting the Conservator's exercise of its statutory powers and functions.

7. HERA provides that "[n]o property of [FHFA] shall be subject to levy, attachment, garnishment, foreclosure, or sale without the consent of [FHFA], nor shall any involuntary lien attach to the property of [FHFA]." See 12 U.S.C. § 4617(j)(3). Therefore, federal law prohibits any action by a third-party that affects Freddie Mac's interest in the loan agreement, note or deed of trust owned by Freddie Mac or under which Freddie Mac is beneficiary.

8. FHFA has represented to Freddie Mac that FHFA supports the appointment of a receiver on the terms set forth in the proposed order accompanying Freddie Mac's contemporaneously filed *Ex Parte Motion for the Appointment of a Receiver*. However, FHFA has reserved its rights as to any other or different terms for the appointment of a receiver that has not been approved explicitly by FHFA in advance.

9. Borrower is a Delaware limited liability company that owns the Property.

**JURISDICTION AND VENUE**

10. This Court has jurisdiction over the subject matter of this action pursuant to 12 U.S.C. § 1452(f) and 28 U.S.C. § 1345.

11. Venue is proper in this Court and this District pursuant to 28 U.S.C. § 1391(b) because: (i) the events giving rise to Freddie Mac's claims occurred in this District; (ii) the Property that is the subject of Freddie Mac's receivership claim is located in this District; (iii) the Defendants are subject the Court's personal jurisdiction; and (iv) Freddie Mac and Borrower consented to venue in this Court in Section 13 of the Multifamily Mortgage, Assignment of Rents, and Security Agreement (as defined below).

## FACTS COMMON TO ALL COUNTS

### I. THE LOAN DOCUMENTS.

12. Freddie Mac is the present owner and holder of a loan in the principal amount of $12,339,00.00 (the "Loan") made to 3900 Cornell Drive pursuant to a certain Multifamily Loan and Security Agreement (the "Loan Agreement"), dated December 31, 2024, executed by and between Borrower as borrower and Newpoint Real Estate Capital LLC as lender ("Newpoint"). A true and correct copy of the Loan Agreement is attached as **Exhibit B**.

13. The Loan is evidenced by a Multifamily Note – Fixed Rate (the "Note") in the original principal amount of $12,339,000.00, executed by Borrower, in favor of Newpoint. A partially redacted, but otherwise true and correct, copy of the Note is attached as **Exhibit C**.

14. The Note is secured by that certain Multifamily Mortgage, Assignment of Rents, and Security Agreement (the "Mortgage"), made to be effective December 31, 2024, executed by Borrower in favor of Newpoint, and recorded on January 9, 2025, Instrument Number 2025-00001432 in the Montgomery County Recorder's Office. A partially redacted, but otherwise true and correct, copy of the Mortgage is attached as **Exhibit D**.

15. Pursuant to Section 2 of the Mortgage and Loan Agreement, Borrower granted a security interest to Freddie Mac under the Uniform Commercial Code in all of the fixtures and equipment attached to the Property, whether now or existing or hereafter arising, as well as all products, accounts, instruments, rents, and all records and data relating to any of the property (the "Collateral"). This was memorialized in a Uniform Commercial Code Financing Statement recorded against the Property on February 27, 2025, in the Delaware Department of State, Instrument Number 1355418, in which Freddie Mac is identified as the secured party and Borrower

is identified as the debtor. A true and correct copy of the foregoing document is attached as **Exhibit E**.

16. Pursuant to Section 3 of the Mortgage, Borrower absolutely and unconditionally assigned and transferred all Rents (as defined therein) in connection with the Property to Freddie Mac.

17. To further secure the obligations under the Note, Kira Golden and Nathan Jones (the "Guarantors") executed a Guaranty with an effective date as of December 31, 2024 (the "Guaranty"). A partially redacted, but otherwise true and correct, copy of the Guaranty is attached as **Exhibit F**.

18. The foregoing documents, and all other documents evidencing, securing or executed in connection with the subject loan are hereinafter referred to as the "Loan Documents" that memorialize the "Loan."

19. Pursuant to an Assignment of Multifamily Mortgage, Assignment of Rents and Security Agreement, dated as of December 27, 2024, the Loan Documents were assigned to Freddie Mac (the "Assignment"). The Assignment was recorded in the Montgomery County Recorder's Office on January 9, 2025, Instrument Number 2025-00001433. A partially redacted, but otherwise true and correct, copy of the Assignment is attached as **Exhibit G**.

20. Freddie Mac is in physical possession of the original Note.

## II. BORROWER'S DEFAULT.

21. Under the Note, Borrower agreed to make payments to the holder thereof of all interest accrued on the Loan commencing on February 1, 2025 and again on the first date of each month thereafter until January 1, 2027. (See **Exhibit C**, p. 1.)

22. Thereafter, Borrower was obligated to make monthly payments of principal and interest in the amount of $73,266.09 beginning on February 1, 2027 until paid in full, with a scheduled maturity date of January 1, 2030. (See **Exhibit C**, p. 1.)

23. Under the Loan Documents, the failure to pay when due any amount required under the Loan Documents constitutes an Event of Default. (See **Exhibit B**, p. 71; **Exhibit C**, pp. 3-4).

24. Here, Borrower has defaulted on the Loan Documents as a result of its failure to pay each monthly installment that have become due beginning December 2025 through August 2026.

## III. APPOINTMENT OF RECEIVER.

25. In light of the default under the Loan Documents, a receiver should be appointed for the Property.

26. As more fully stated in the *Ex Parte Motion for Appointment of Receiver*, filed contemporaneously herein, the Loan Documents indicate Borrower's express consent to, and expressly allow Freddie Mac to seek, the appointment of a receiver upon the occurrence of an Event of Default.

27. Pursuant to Section 3(c)(ii) of the Mortgage, Freddie Mac is entitled to have a receiver appointed upon an Event of Default. Furthermore, if Freddie Mac "elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower…expressly consents to the appointment of such receiver, including the appointment of a receiver *ex parte* if permitted by applicable law." (*See* **Exhibit D**, pp. 9-10).

28. Therefore, in accordance with the terms of the Loan Documents, Freddie Mac asks the Court to appoint a receiver.

**COUNT ONE: IN REM DEFAULT OF NOTE**
**(Against Borrower Only)**

29. Freddie Mac incorporates by reference each of the allegations in the preceding paragraphs as if fully re-written and restated herein.

30. Borrower has breached the Note, Loan Agreement, and other Loan Documents and failed to cure the Events of Default thereunder.

31. Freddie Mac has satisfied all of its obligations under the Loan Documents, and all conditions precedent to Freddie Mac's claims have been performed, have occurred, or have been excused.

32. Pursuant to Section 5 of the Note, Freddie Mac has accelerated the entire balance due under the Note, the full amount of which is currently due and owing.

33. Upon default under the provisions of the Note, the holder of the Note is entitled to declare all unpaid principal, accrued interest, late fees, attorney fees, expenses, and any and all other amounts provided for in the Note immediately due and payable.

34. Based on the default of the Note, the amount due and owing to Freddie Mac is (as of August 10, 2026): (a) the unpaid principal due under the Loan Documents in the amount of $12,339,000.00, (b) the aggregate accrued, and unpaid interest (including Default Interest, interest on advances, and late fees) due under the Loan Documents in the amount of $997,948.65, and (c) tax and insurance advances in an amount of $111,587.43. Collectively these amounts total $13,448,536.08, exclusive of Freddie Mac's attorney costs which are estimated at $12,912.00 as of August 15, 2026. Interest, fees, and expenses continue to accrue pursuant to the terms of the Loan Documents.

35. Any and all payments received after acceleration have been or will be applied in accordance with the payment application process set forth in the Loan Documents.

36. Freddie Mac is entitled to an *in rem* judgment on all amounts due under the Note and is further entitled to additional amounts under the Loan Documents including, but not limited to additional property protection advances, other advances, fees and charges, and all collection costs including without limitation attorneys' fees.

**COUNT TWO: FORECLOSURE OF MORTGAGE AND SECURITY AGREEMENT**
**(Against all Defendants)**

37. Freddie Mac incorporates by reference each of the allegations in the preceding paragraphs as if fully re-written and restated herein.

38. By virtue of the lien of the Mortgage, Freddie Mac holds a valid first priority mortgage lien on the Property, superior to any and all other liens, claims or encumbrances other than those for any tax lien asserted by the Montgomery County Treasurer under state law.

39. Pursuant to the terms of the Mortgage, upon the occurrence of any Event of Default (as defined in the Loan Agreement), the mortgagee is entitled to declare the entire indebtedness immediately due and payable and to institute a judicial foreclosure of the lien of the Mortgage.

40. Pursuant to the terms of the Security Agreement, upon an Event of Default, Borrower further agreed that the mortgagee shall have all the rights and remedies of a secured party under the Uniform Commercial Code as adopted by the State of Ohio with respect to any collateral to which the Security Interest attached.

41. An Event of Default has occurred under the terms of the Loan Agreement, the terms of the Mortgage and Security Agreement have been breached, and Freddie Mac is entitled to have its lien on and the Security Interest in the Property foreclosed.

42. All conditions precedent to Freddie Mac's claim have been performed, have occurred, or have been excused.

43. Freddie Mac is authorized under the Loan Documents to make certain protective advances to preserve the value of its collateral. Any amounts disbursed by Freddie Mac for the preservation of its collateral become additional indebtedness secured by the Mortgage.

44. The Property cannot be divided without materially impairing its value or the interests of Freddie Mac therein, and the Property should therefore be sold according to law, as a whole, with the proceeds of sale after payment of the costs of sale and real estate taxes being applied to satisfy Freddie Mac's claims.

45. The Properties should be sold pursuant to Ohio law and procedures, free and clear of any liens, claims, or encumbrances, other than the obligation to pay real estate taxes and assessments going forward.

46. Freddie Mac further acknowledges that the Montgomery County Treasurer has an interest in the Property for taxes and assessments.

47. The Preliminary Judicial Report related to the Property is attached to this Complaint as **Exhibit I**.

48. As outlined in the Preliminary Judicial Report, Defendant Ohio Department of Job and Family Services, Bureau of Unemployment, has or may claim some interest in the Property by virtue of a Notice of Lien in the amount of $1,106.37, recorded on July 16, 2013 in the Montgomery County Recorder's Office, Instrument Number 2013-00049511.

49. As outlined in the Preliminary Judicial Report, Defendant Roto-Rooter Services Company has or may claim some interest in the Property by virtue of an Affidavit for Mechanic's Lien in the amount of $641.20, recorded on January 4, 2021 in the Montgomery County Recorder's Office, Instrument Number 2021-00000034.

50. As outlined in the Preliminary Judicial Report, Defendant Arbor Tech & Property Maintenance has or may claim some interest in the Property by virtue of a Affidavit for Mechanic's Lien in the amount of $2,126.00 recorded on September 23, 2022 in the Montgomery County Recorder's Office, Instrument Number 2022-00059780.

51. As outlined in the Preliminary Judicial Report, Defendant Dry Patrol, LLC has or may claim some interest in the Property by virtue of an Affidavit for Mechanic's Lien in the amount of $2,998.82 recorded on November 14, 2022 in the Montgomery County Recorder's Office, Instrument Number 2022-00070950.

**COUNT THREE: ENFORCEMENT OF ASSIGNMENT OF LEASES**
**(Against Borrower Only)**

52. Freddie Mac incorporates by reference each of the allegations in the preceding paragraphs as if fully re-written and restated herein.

53. Pursuant to terms of the Assignment of Leases, upon the occurrence of an Event of Default under the Loan Agreement, Freddie Mac, as mortgagee of record, is entitled to collect and receive all Rents.

54. An Event of Default has occurred under the terms of the Mortgage and the Loan Agreement and Freddie Mac is entitled to exercise all of its rights under the Assignment of Leases, including the right to collect Rents, directly or through a receiver.

55. All conditions precedent to Freddie Mac's claim have been performed, have occurred, or have been excused.

**COUNT FOUR: APPOINTMENT OF RECEIVER**
**(Against Borrower Only)**

56. Freddie Mac incorporates by reference each of the allegations in the preceding paragraphs as if fully re-written and restated herein.

57. Under Section 9.01 of the Loan Agreement, any default by Borrower under the terms of the Loan Documents, including any failure by Borrower to pay any amount when due under the Note, constitutes an "Event of Default" under the Loan Agreement.

58. Pursuant to Section 3(c)(ii) of the Mortgage, Borrower agreed to and recognized Freddie Mac's right to the appointment of a receiver upon an Event of Default, without notice.

59. Specifically, in Section 3(c)(ii) of the Mortgage, Borrower as grantor thereunder expressly authorized and consented to the appointment of a receiver following an Event of Default as follows:

> [I]f an Event of Default has occurred and is continuing, regardless of the adequacy of Lender's security, without regard to Borrower's solvency and without the necessity of giving prior notice (oral or written) to Borrower, Lender may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to take any or all of the actions set forth in the preceding sentence. **<u>If Lender elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver ex parte if permitted by applicable law.</u>**

(See **<u>Exhibit D</u>** at pp. 9-10) (emphasis added).

60. In Section 3(v) of the Mortgage, Borrower further agreed that, following an Event of Default, Borrower would: (i) surrender possession of the Property to a receiver and (ii) cooperate fully with the receiver's efforts to take control of the property:

> Immediately upon appointment of a receiver . . . Borrower shall surrender possession of the Mortgaged Property to . . . the receiver . . . and shall deliver to . . . the receiver . . . all documents, records (including records on electronic or magnetic media), accounts, surveys, plans, and specifications relating to the Mortgaged Property and all security deposits and prepaid Rents.

(*Id.*)

61. Because Borrower has consented to the appointment of a receiver following an Event of Default under the Mortgage, and because Events of Default have occurred and remain uncured, Freddie Mac respectfully requests that the Court appoint a receiver for the Property.

62. In addition to Freddie Mac's contractual right to the appointment of a receiver under the Mortgage based on Borrower's consent, the appointment of a receiver is appropriate under the Court's equitable powers given: (i)Borrower's lack of financial wherewithal to continue to operate and maintain the Property; and (ii) the consequent danger of the Property being harmed and diminishing in value in the event that it is not properly operated and maintained.

63. As described in Freddie Mac's accompanying *Ex Parte Motion for Appointment of Receiver* (the "Motion"), a receivership is necessary and desirable to preserve the Property and protect it against damage, loss, or destruction, and protect the safety of the Property's residents. Likewise, a receivership is needed to account properly for, and collect, the rents, revenues, and profits generated by the Property.

64. FHFA has advised Freddie Mac that FHFA supports the appointment of the Receiver on the terms set forth in the proposed Order accompanying the Motion.

65. In order to protect and preserve the value of the Property and Freddie Mac's security interest therein, and to prevent waste and material injury to the Property, it is necessary that a receiver be appointed pursuant to Section 3 of the Mortgage and the equitable powers of this Court to: (i) take possession of the Property; (ii) collect its rents, issues, revenue, income and profits; and (iii) operate and manage the Property pending the completion of this case.

## COUNT FIVE: ACCOUNTING
## (Against Borrower Only)

66. Freddie Mac hereby incorporates by reference all of the foregoing allegations of the Complaint as though fully set forth herein.

67. Pursuant to Section 6.07 of the Loan Agreement, Borrower is required to furnish to Freddie Mac, in a format certified by Borrower, complete and accurate periodic statements of income and expenses for the Property and other information, including a rent schedule and accounting of security deposits, and Borrower is required to permit Freddie Mac to examine and inspect the books, records, contracts and leases for the Property.

68. Freddie Mac is entitled to an order requiring Borrower to provide Freddie Mac with the financial information and reporting required under the Mortgage and to permit Freddie Mac to inspect the Borrower's books and records for the Property.

## PRAYERS FOR RELIEF

**WHEREFORE**, Freddie Mac prays for relief as follows:

1. An in rem judgment be granted to Freddie Mac in this mortgage foreclosure action in the following amounts (as of August 10, 2026): (a) the unpaid principal due under the Loan Documents in the amount of $12,339,000.00, (b) the aggregate accrued, and unpaid interest (including Default Interest, interest on advances, and late fees) due under the Loan Documents in the amount of $997,948.65, and (c) tax advances in an amount of $111,587.43. Collectively these amounts total $13,448,536.08, exclusive of Freddie Mac's attorney costs which are estimated at $12,912.00 as of August 15, 2026. Interest, fees, and expenses continue to accrue pursuant to the terms of the Loan Documents;
2. A finding that the Mortgage is a first and best lien on the Property, subject only to any lien that may be held by the County Treasurer that has priority over the Mortgage as a matter of law;
3. An order: (1) foreclosing the equity of redemption and dower of all Defendants named in this action, (2) requiring that the Property, be sold free and clear of all liens, interests, and

dower, (3) requiring all Defendants to set up their liens or interest in the Property or be forever barred from asserting such liens or interests, (4) requiring that the proceeds of the sale of the Property be applied to pay all amounts due Freddie Mac, and (5) granting Freddie Mac all other relief, legal and equitable, as may be proper and necessary, including, for example, a writ of possession;

4. An order declaring that Freddie Mac is entitled to exercise its rights under the Assignment of Leases;

5. For the entry of an order appointing a receiver to take possession and control of the Property, collect its rents, issues, revenue, income and profits, and otherwise operate and manage the Property, pending the completion of this case or further order of this Court;

6. For the entry of an order requiring Borrower to provide Freddie Mac with the financial information and reporting required under the Mortgage and to permit Freddie Mac to inspect Borrower's books and records for the Property; and

7. Any other relief that this Court deems just and equitable.

Respectfully submitted,

*<u>/s/ James W. Sandy</u>*
James W. Sandy (0084246)
**Hinshaw & Culbertson LLP**
16102 Chagrin Blvd., Ste 112
Shaker Heights, OH 44120
Telephone: 216.247.8509
Facsimile: 216.247.8501
jsandy@hinshawlaw.com
*Counsel for Plaintiff Freddie Mac*